**Sheila K. WRIGHT and Lewis R. Wright, Appellees,**

v.

**Charles A. SCOTT, Appellant.**

**No. 86-807.**

Supreme Court of Iowa.

Aug. 19, 1987.

Robert R. Rush, Susan E. Harman and John C. Monroe of Lynch, Dallas, Smith & Harman, Cedar Rapids, for appellant.

Benjamin W. Blackstock and James W. Affeldt of Eells, Blackstock, Affeldt & Harms, Cedar Rapids, for appellees.

PER CURIAM.

An automobile collision on Interstate 80 north of Iowa City on July 10, 1983, gave

one-half months at the time of trial. Defendants insisted at trial the absences were to con-

tinue.

rise to this personal injury action brought by the occupant of one vehicle, Sheila Wright, and her husband Lewis R. Wright. The defendants in the action were the appellant Charles A. Scott, driver of his vehicle, and two other defendants, the owner and operator of a third vehicle. Although Scott and the other two defendants separately negotiated settlements with the Wrights before trial, the district court allowed the Wrights to proceed to trial against Scott alone after determining the Wrights were entitled to abort their settlement agreement with Scott. Scott's appeal presents several issues, but we address only the question whether Scott established as a matter of law that the case was settled before trial. We conclude that Scott established a valid and enforceable settlement agreement. We reverse the judgment entered in the district court and remand for entry of judgment in accordance with the settlement agreement.

We need only briefly describe the three-vehicle incident which led to this litigation. Sheila K. Wright was driving behind Scott on Interstate 80 when his vehicle struck a bridge abutment. Sheila stopped her vehicle in the right lane to avoid striking the Scott vehicle and to render aid if necessary. While she was still in her vehicle Sheila was struck from behind and injured by a converted school bus owned and driven by the other defendants, Gary D. Kilmartin and Terry Luttrel.

The Wrights initially sued only Kilmartin and Luttrel, but they later added Scott as a defendant on the theory that his negligence in colliding with the bridge abutment was a proximate cause of the two-vehicle collision that injured Sheila. About ten days before trial Scott filed an offer to confess judgment pursuant to Iowa Code chapter 677 (1983), proposing to settle for $4000 and court costs while leaving open the Wrights' claims against Kilmartin and Luttrel. The offer to confess was served on the Wrights on February 6, 1986, and filed the next day. On Friday, February 14 both attorneys for the Wrights telephoned the Scott's attorney, indicated that was the last day for accepting the offer, and stated that the settlement agreement was accepted. The

attorneys for each side at that time discussed limitations on the agreement that would preserve the Wrights' claims against the remaining defendants, and they also agreed on the manner of payment. The Wrights had authorized their attorneys to accept Scott's settlement proposal, and on the evening of February 14 the Wrights were told the proposal had been accepted.

The Wrights later that evening phoned their attorneys and raised questions concerning how the settlement would affect their claims against Kilmartin and Luttrel, the remaining defendants. Lewis Wright testified:

Q. Had you and Mrs. Wright discussed the offer to confess judgment and what effect it would have upon any other judgment that you would have? A. We had talked about it, but we didn't have any idea what effect it would have. Our understanding was that it was just releasing Mr. Scott and our other judgment would still stand.

The Wrights arranged to meet with the attorneys on the following Monday, February 17, and at that meeting their attorneys told the Wrights their understanding was not correct. Later on that Monday, February 17, the Wrights' attorneys phoned Scott's attorney, said the Wrights did not fully understand the effect the settlement agreement would have on their remaining claims, and said the Wrights no longer considered the settlement satisfactory and acceptable. They followed with a letter advising Scott the Wrights would not accept the settlement offer.

Scott immediately filed a motion to enforce the settlement agreement. An evidentiary hearing on the resisted motion was held before Judge Thomas L. Koehler, who overruled the motion following the hearing. It is noteworthy that the parties presented the issue whether the case had been settled to the district court without suggesting that the issue was appropriately presented in a separate action or through the filing of additional pleadings to frame the issue. We therefore do not decide whether the procedure used in this

case to present the issue to the district court was correct.

In its ruling the district court found that the Wrights' attorney had "indicated" to Scott's attorney that the offer was to be accepted based upon what Wrights' attorneys had been told by their clients, but the court also found that "the plaintiffs were confused and did not understand the law of comparative negligence at the time (due to the fact that the plaintiffs thought that the acceptance of the offer would not affect potential judgments against the other defendants)." The court held the agreement unenforceable on the ground that "[t]here was no informed and voluntary consent to" Scott's offer due to "misunderstanding of the law." The trial court held in the alternative that Scott had not shown compliance with time constraints set forth in Iowa Code chapter 677, providing that an offer to confess judgment must be accepted within five days of when it is made.

With the motion to enforce settlement agreement overruled, the case proceeded to trial, and based upon a jury verdict judgment was entered in favor of Wrights and against Scott for actual and punitive damages.

■ I. The law favors settlement of controversies. A settlement agreement is essentially contractual in nature. *Wong v. Bailey,* 752 F.2d 619, 621 (11th Cir.1985); *Linn County v. Kindred,* 373 N.W.2d 147, 149–50 (Iowa App.1985); *Jallen v. Agre,* 264 Minn. 369, 373, 119 N.W.2d 739, 743 (1963); 15A C.J.S. *Compromise and Settlement* § 1, at 170 (1967). The typical settlement resolves uncertain claims and defenses, and the settlement obviates the necessity of further legal proceedings between the settling parties. We have long held that voluntary settlements of legal disputes should be encouraged, with the terms of settlements not inordinately scrutinized. *See, e.g., Bakke v. Bakke,* 242 Iowa 612, 618–19, 47 N.W.2d 813, 817 (1951); *Messer v. Washington Nat'l Ins. Co.,* 233 Iowa 1372, 1380, 11 N.W.2d 727, 731–32 (1943).

Without question Scott made a valid offer of settlement to the Wrights, and the offer was supported by adequate considera-

tion. The Wrights, however, contend they were entitled unilaterally to reject the agreement they had made on the theory they misunderstood its legal consequences.

The Wrights claim they were confused whether the $4000 Scott would pay would reduce the potential judgment they might receive against the remaining defendants. The trial court accepted that contention, holding that they were confused about the legal affects of the settlement and therefore could withdraw from it. One narrow question we must answer in this appeal is whether a party who has accepted a settlement can later rescind that agreement based on that party's unilateral mistake of law.

■ Settlement agreements are by their very nature the voluntary resolution of uncertain claims and defenses. Because parties are unsure about the outcome of litigation they have a real incentive to accept a compromise settlement agreement, realizing that if they continue they may fare better but they may fare worse. It is therefore well settled that "to vitiate a settlement, a mistake must be mutual, material, and concerned with a present or past fact." *Anderson v. Ciba-Geigy Corp.,* 490 F.2d 438, 442 (8th Cir.1974); *Stetzel v. Dickenson,* 174 N.W.2d 438, 440 (Iowa 1970). Similarly, for a mistake of law to render void a settlement agreement, the mistake generally must be mutual and material. 15A Am.Jur.2d *Compromise and Settlement* § 34, at 806 (1976). Voluntary settlements will not be disturbed for ordinary mistakes of law. *Bakke v. Bakke,* 242 Iowa 612, 618–19, 47 N.W.2d 813, 817, (1951); *see Bergman v. Bergman,* 247 Iowa 98, 103, 73 N.W.2d 92, 95–96 (1955). We do not have in this case the exceptional circumstance of a mistake of law procured by fraud or misrepresentation that may be a ground for invalidating a settlement agreement. *See Baker v. Bockelman,* 208 Iowa 254, 258, 225 N.W. 411, 412 (1929); *Kelly v. Chicago Rock Island & Pac. Ry. Co.,* 138 Iowa 273, 280, 114 N.W. 536, 539 (1908) ("[I]t is even more a matter of good policy and good morals to stamp the law's

disapproval upon settlements which bear the taint of fraud and undue advantage.").

■ Applying these principles favoring settlement we conclude that as a matter of law the Wrights had no right to withdraw from the settlement agreement they made with Scott on February 14, 1984. On this evidentiary record there can be no question that Wrights made an agreement with Scott and seek to withdraw solely on the theory of unilateral mistake of law. The record is clear: Scott offered $4000 in consideration for being released as a defendant; this was the agreement contemplated by all parties when Wrights' attorneys, with authorization from their clients, accepted Scott's offer; a meeting of the minds occurred. The Wrights' confusion after the settlement was made about how it might affect their claims against other parties was insufficient as a matter of law to vitiate the settlement agreement.

We repeat what we said in *Messer v. Washington National Insurance Co.*, 233 Iowa 1372, 1380–81, 11 N.W.2d 727, 732 (1943):

> "Courts should ... support agreements which have for their object the amicable settlement of doubtful rights by parties; ... [S]uch agreements are binding without regard to which party gets the best of the bargain or whether all the gain is in fact on one side and all the sacrifice on the other."

The district court had the authority to enforce this settlement agreement. *See Wiltgen v. Hartford Accident & Indem. Co.*, 634 F.2d 398, 400 (8th Cir.1980); *Cunningham v. Iowa-Illinois Gas & Elec. Co.*, 243 Iowa 1377, 1382, 55 N.W.2d 552, 554–55 (1952). This settlement agreement terminated the claims Wrights held against Scott.

■ II. The district court, in overruling the motion to enforce the settlement agreement, held in the alternative that Scott had not established compliance with the procedures and time constraints governing offers to confess judgment provided for in Iowa Code sections 677.8 and 677.9. Iowa Code section 677.9 provides in pertinent part: "If the notice's acceptance is not given in the period limited, the offer shall be treated as withdrawn...." Iowa Code section 677.8 provides that "within five days after the offer is made the plaintiff may accept the defendant's offer to confess judgment."

We need not decide whether in this case the Wrights accepted the Scott offer within the time provided by those statutory provisions. There is undisputed evidence in the record that when the Wrights' attorneys phoned Scott's attorney on February 14 to accept Scott's offer to confess judgment, the Wrights' attorneys did express some concern whether acceptance would be timely. Scott's attorney expressed no concern about the time limit and allowed Wrights to accept the offer regardless of the time limit.

The statutory limitation in section 677.8 is one that runs in favor of parties like Scott who make the offer to confess judgment, not persons like Wrights who wish to accept it. Scott had the authority to waive the time limit and did so.

No time restraints or procedural irregularities stood in the way of the parties' authority to reach a settlement agreement on February 14, 1986. The Wrights and Scott reached a valid agreement and the district court shall upon remand enter a judgment enforcing it.

REVERSED AND REMANDED WITH DIRECTIONS.