# IN THE COURT OF APPEALS OF IOWA

No. 19-1581
Filed August 19, 2020

**IN THE INTEREST OF D.M.,**
**Minor Child,**

**K.M., Mother,**
        Appellant.
_____

Appeal from the Iowa District Court for Warren County, Brendan Greiner,
District Associate Judge.


A mother appeals a dispositional order entered in a child-in-need-of-
assistance proceeding. **AFFIRMED.**



David L. Leitner of Leitner Law Office, West Des Moines (until withdrawal),
and Karen A. Taylor of Taylor Law Offices, P.C., Des Moines, for appellant mother.

Thomas J. Miller, Attorney General, and Ellen Ramsey-Kacena, Assistant
Attorney General, for appellee State.

M. Kathryn Miller of Juvenile Public Defender, Des Moines, attorney and
guardian ad litem for minor child.



Considered by Doyle, P.J., and Mullins and Greer, JJ.

**MULLINS, Judge.**

A mother appeals the dispositional order that transferred custody of her child to the father.[1]  She also argues she has been subjected to discrimination for her mental-health diagnoses and raises evidentiary issues.  The father joins the State's resistance to the mother's appeal.

**I.      Background Facts and Proceedings**

This family came to the attention of the Iowa Department of Human Services (DHS) following a physical altercation between the mother and father during a custody transfer.  The parents stipulated to adjudication of the child as in need of assistance (CINA) in June 2019 pursuant to Iowa Code section 232.2(6)(c)(2) (2019).  The district court granted the father temporary legal custody.  The mother was provided supervised visitation.  The district court listed factors that led to removal including the child's school-attendance records, the criminal history of both parents, the mother's use of corporal punishment, the child's medical needs, and the mother's mental-health issues.  The district court also noted the parents' inability to effectively co-parent.  Custody with the father was continued following a dispositional hearing.  The mother appeals.

**II.      Standard of Review**

CINA proceedings are reviewed de novo.  *In re J.S.*, 846 N.W.2d 36, 40 (Iowa 2014).  "We are not bound by the juvenile court's fact findings; however, we do give them weight.  Our primary concern is the child[]'s best interests."  *Id.* at 41.  "In determining the best interests of the child, 'we look to the parent['s] past

---

[1] Although her petition on appeal is couched in terms of challenging removal, the true substance of her argument is a challenge to the disposition.

performance because it may indicate the quality of care the parent is capable of providing in the future.'" *In re L.H.*, 904 N.W.2d 145, 149 (Iowa 2017) (quoting *In re J.E.*, 723 N.W.2d 793, 798 (Iowa 2006)). "CINA determinations must be based upon clear and convincing evidence." *J.S.*, 846 N.W.2d at 42. We ask whether there are "serious or substantial doubts as to the correctness [of] conclusions of law drawn from the evidence." *L.H.*, 904 N.W.2d at 149 (quoting *In re D.W.*, 791 N.W.2d 703, 706 (Iowa 2010)).

### III.     Analysis

#### A.     Removal

The mother argues the child's transfer of custody was not supported by clear and convincing evidence. She insists there is not, nor has there ever been, a risk of harm to the child in her home. When a child's removal is continued at a dispositional hearing, an initial order for removal cannot be modified. *In re A.M.H.*, 516 N.W.2d 867, 871 (Iowa 1994). Courts are to make the least restrictive dispositions and make findings in writing. Iowa Code § 232.99(4), (5). "Whenever possible the court should permit the child to remain at home with the child's parent" unless clear and convincing evidence is presented showing, among other things, "the child cannot be protected from some harm which would justify the adjudication of the child as a [CINA] and an adequate placement is available." *Id.* § 232.102(4)(a)(2). Thus, we must ask whether the State presented clear and convincing evidence that would justify CINA adjudication.

The child was adjudicated CINA pursuant to Iowa Code section 232.2(6)(c)(2)—"an unmarried child . . . who has suffered or is imminently likely to suffer harmful effects as the result of . . . the failure of the child's parent . . . to

exercise a reasonable degree of care in supervising the child." "Harmful effects" are established where "there was harm to a child's physical, mental, or social well-being or such harm was imminently likely to occur." *J.S.*, 846 N.W.2d at 41–42. "We do not require neglect or physical or sexual abuse to be on the verge of happening before adjudicating a child as one in need of assistance." *Id.* at 42. "A child's best interests include not only proper care and treatment but also education." *In re B.B.*, 440 N.W.2d 594, 596–97 (Iowa 1989).

In this case, the child was excessively tardy and absent from school. When the child was sent to school from the mother's home, there were hygiene concerns when the child arrived at school. The child was known to engage with the mother's pets in an aggressive manner; there is no record this behavior was addressed. The mother at times used spanking as a disciplinary measure for other behavioral issues. The child was injured during one spanking in an attempt to evade the mother's grasp. The child reported to DHS workers and the father that the mother was "mean" and showed symptoms of distress when the child was being transferred to the mother's care. The mother had also recently been charged with assault after a physical altercation with her own mother. The mother acknowledges she has mental-health issues but has not engaged in any treatment. The mother failed to administer prescribed medications to the child on more than one occasion.

The record shows the child is subject to harms including school attendance, hygiene concerns, and medical treatment instability when in the mother's care. These are the types of harm the statute seeks to prevent. *See J.S.*, 846 N.W.2d at 41–42. Upon our de novo review of the record, we find clear and convincing

evidence supports the district court's continued transfer of custody of the child to the father because, while in the mother's care, the child cannot be protected from harm that would justify adjudication of the child as a CINA, placement of the child in the mother's home would be contrary to the welfare of the child, and reasonable efforts have been made.[2] *See* Iowa Code § 232.102(4)(a)(2), (b).

B.     Claims of Discrimination

The mother argues she has been subject to discrimination based on her mental-health issues. She says "the only issue . . . which the court seems to consider significant is that [the mother] carries a diagnosis of post-traumatic stress disorder, a recognized mental illness." The mother asserts the district court wrongfully focused on her mental health and made its decisions out of annoyance.

"Mental disability, standing alone, is not a sufficient reason for the termination of the parent-child relationship," but "it is a proper factor to consider." *In re K.F.*, 437 N.W.2d 559, 560 (Iowa 1989). Furthermore, "when [mental disability] contributes to a person's inability to parent, [it] may be determinative on the issue of whether termination is required in the child's best interests." *Id.* Although this appeal reached us at the dispositional stage, we will proceed by the same principles.

The district court made written findings in both its adjudication and dispositional decisions. In both documents, the district court discussed the mother's mental-health issues and the need for treatment. The court said, "the Court finds by clear and convincing evidence [the mother's] severe mental health

---

[2] We note "the goal is for [the child] to reunify with her mother."

impairment is primarily responsible" for "the parents' inability to effectively co-parent, in turn causing debilitating anxiety in [the child]." However, the written findings show other factors also influenced the district court's decisions. The mother's interactions with providers were consistently strained. Instead of focusing on her own situation, the mother repeatedly derailed those conversations by engaging in negative discussions about the father and blaming him for her mental-health issues and DHS intervention. The mother discussed the case in the child's presence. And, again, there were concerns about the child's school attendance, hygiene, and consistent administration of the child's medications. Our review of the record reveals the district court considered several factors related to the child's best interests and there was no discrimination against the mother related to her mental-health issues.

C.     Evidentiary Issues

The mother argues the district court erred in failing to admit her exhibit 18, copies of pages from the Diagnostic and Statistical Manual of Mental Disorders (DSM), and admitting the father's exhibit 26, a letter from one of the father's treatment providers regarding a prescription.

In her brief, the mother indicates her arguments are supported by Iowa Code section 232.99(2), which states, "all relevant and material evidence shall be admitted." However, the only reference in the record to that section relates to the district court's reasoning for admitting the father's exhibit 26. No other supporting authority is provided. Our rules state a petition on appeal from a CINA proceeding must comply with the form provided, which instructs petitioners to provide the court with references to supporting legal authority. Iowa Rs. App. P. 6.201(1)(d), .1401

Form-5. Because the mother has not provided any legal authority to support her arguments on appeal, we deem this issue waived. Further, she did not make an offer of proof for the admission of exhibit 18 and thus did not preserve error for appellate review. *Strong v. Rothamel*, 523 N.W.2d 597, 599 (Iowa Ct. App. 1994).

**IV.     Conclusion**

Because we find the evidence presented at the dispositional hearing was clear and convincing that custody should be transferred to the father and there was no discrimination toward the mother, we affirm the district court.

**AFFIRMED.**